In the Matter of the Claim of EDWARD J. WENTWORTH, JR., et al., Respondents. MARTIN P. CATHERWOOD, as Industrial Commissioner, Appellant.

Third Department, May 26, 1960.

*Louis J. Lefkowitz, Attorney-General (Harold F. Lee, Paxton Blair* and *Samuel Stern* of counsel), for appellant.

*Breed, Abbott & Morgan (Daniel F. O'Connell, Charles H. Tuttle* and *Robert A. Longman* of counsel), for Edward J. Wentworth, Jr., and others, respondents.

*Howard A. Levine* for Nicola Pisotti and others, respondents.

HERLIHY, J.   On February 3, 1958, the employer, Tully & Di Napoli, Inc., a contracting firm, was engaged in several large construction projects in the metropolitan area.   On that date Local 282 of the Teamsters Union called an industry-wide strike which affected the dump truck drivers of the employer as well as the truck drivers of Colonial Sand & Gravel Company, a firm engaged in delivering concrete to the employer.

The claimants here involved were carpenters and timbermen whose duties consisted of constructing wooden forms and other details necessary before the pouring of concrete at the job site. In that respect it might be said claimants were partly dependent upon the truck drivers of the Colonial Sand & Gravel Company.

The Referee found the claimants were unemployed because of the industry-wide teamsters strike but the Appeals Board reversed and held " The employer's decision to curtail operations was induced partly by the strike of truck drivers employed by its material suppliers and partly by unfavorable weather factors."

The statute involved reads as follows:

"§ 592. Suspension of accumulation of benefit rights. 1. Industrial controversy. The accumulation of benefit rights by a claimant shall be suspended during a period of seven consecutive weeks beginning with the day after he lost his employment because of a strike, lockout, or other industrial controversy in the establishment in which he was employed, except that benefit rights may be accumulated before the expiration of such seven weeks beginning with the day after such strike, lockout, or other industrial controversy was terminated." (Labor Law, § 592, subd. 1.)

Its purpose was aptly stated in *Matter of Burger* (277 App. Div. 234, 236), where the court said: " The State is to stand aside for a time, pending the settlement of differences between employer and employees, to avoid the imputation that a strike may be financed through unemployment insurance benefits."

In a recent case, *Matter of Freeman* (*Catherwood*) (9 A D 2d 1008), this court affirmed a finding of no industrial controversy in the establishment which employed the claimants where members of a nonstriking union refused to cross picket lines of a striking union associated with another employer at the same work site.

In the present circumstances the testimony established that some of the claimants continued employment for several days following the strike and others returned to work prior to its settlement. The record further showed that the job never was completely shut down and the usual consequences of a strike, refusal to work, refusal to cross picket lines, were singularly absent from this record.

While section 592, as drawn, is broad in its scope, we are concerned here with social legislation, the primary intent of which is to compensate workers who are out of employment *through no fault of their own*. The section should be strictly applied to those involved in the strike and to those who are directly or indirectly aiding and abetting its continuance but here the only association these claimants had with the strike was that one segment of the employees of the same employer was involved. The proof seems to negate dependence of these claimants on their striking fellow employees. The foreman affirmed the statement that the bad weather was a factor and at most it was a combination of the strike and the weather but that the truck drivers of the employer affected by the strike did not necessarily affect the working of the claimants. In other words, there was no lack of employment here because of dependence

of these claimants on the striking truck drivers of the employer but if at all affected by the strike, it was due to the truck drivers — members of the same local — who drove the trucks necessary to supply concrete for the employer's job.

There was ample factual evidence to sustain the board's statement that "the employer's decision to curtail operations was induced partly by the strike of truck drivers employed by its material suppliers and partly by unfavorable weather factors" and we do not find it in conflict with a reasonable interpretation of the statute here involved.

The decision should be affirmed.

BERGAN, P. J., COON, GIBSON and REYNOLDS, JJ., concur.

Decision affirmed, with costs.